Dorothy Calabrese, M.D.,
[Proposed] Next Friend for Melissa Calabrese
2449 South El Camino Real
San Clemente, CA 92672-3351
T. 949.369.6679 / F. 949.369.9674
enviromed@msn.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA CALABRESE,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA<br>COUNTY OF ORANGE<br>PROVIDENCE ST. JOSEPH HEALTH<br>MISSION HOSPITAL REGIONAL MEDICAL CENTER<br>BRIAN CHOI, M.D.<br>TONY CHOW, M.D.<br>AFSHIN DOUST, M.D.,<br>MAHDIEH FALLAHTAFTI, D.O.<br>LAWRENCE V. TUCKER, M.D.<br>TARA YUAN, M.D.<br>DOES 1-10<br><br>Defendants. | No. 5:19-cv-02492-CBM-SP<br><br>RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER FRCP RULES 12(b)(4)(5) & (6).<br><br>DECLARATION OF DOROTHY CALABRESE, M.D.<br><br>SECOND AMENDED COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF<br><br>DATE: May 5, 2020<br>TIME: 10:00 am<br>DEPT: 8B, 8th Floor |

    I am the Plaintiff's mother, a lifelong Catholic, a duly-licensed California physician since 1979, and admitted to the CA Superior Court as an expert witness in

my specialty. Plaintiff is totally psychiatrically disabled (SEALED Exhibits A, B & C)  I am her non-attorney legal representative. (Exhibits D & E).  I can and will competently testify to the facts contained in this declaration, which will be validated in litigation discovery.

The Providence St. Joseph Health and Mission Hospital Regional Medical Center (PSJH / MRHC) a Lanterman-Petris-Short (LPS) contracted hospital, does not deny the relevant facts, including "hospital-dumping" of Plaintiff, a seriously-mentally-ill (SMI) inpatient into homelessness.

Defendants' claim they are exempt from the Americans with Disability Act, Olmstead v. L.C., and other relevant laws because they are a private hospital and these laws only apply to public entities.  My position is our Supreme Court justices did not discriminate against SMI inpatients involuntarily admitted to private hospitals and rule that Olmstead only applies to public entities.  Other private hospitals operating LPS Act designated facilities do not discriminate by "hospital dumping." Defendants' have major federal and state government contracts to which Plaintiff is a third party, do not allow discrimination.

PSJH / MRHC claim "clean hands" as they can't practice medicine. They claim their independent contractor physicians function freely practicing under their Medical Board of CA licenses.  But that is not true because PSJH / MRHC:

    a. enforces strict religious and moral exemptions on their physicians, such as the ban on abortions.

b. contracted with Orange County to be an LPS Act designated-facility.

Most of Defendants' 18 LPS Act contract violations (listed below) in this case require compliance by their physicians as a team.

This is discrimination because the great Sisters of St. Joseph don't "hospital-dump" a brain tumor patient with secondary psychosis to wander the streets of Anaheim all day for months, forced to scavenge food and non-potable water. The Sisters of St. Joseph, like Mother Theresa, would seek that brain tumor patient out and rescue her from the streets.

It's doubtful that the Sisters of St. Joseph would ever allow this discrimination if their attorneys weren't shielding them from the Truth for their own gain. These Sisters are living saints in our Catholic world. We love them.

How can Defendants argue they were complying with legislative intent in the LPS Act by discharging Plaintiff to the "least restrictive" setting – homelessness? Defendants arrogantly state Plaintiff just wishes she had better insurance. Plaintiff had no idea she had top private insurance during her many PSJH St. Joseph Hospital confinements. I personally paid a very high premium for it until Obamacare forced her to Medi-Cal. When Plaintiff attempted suicides and was automatically admitted to PSJH hospitals, she had no knowledge of understanding of insurance. She wasn;t in MediCal. She was in stage III mania. **Her only stated wish is: "I wish this illness hadn't happened to me."**

My declaration only preserves the Court record as a witness in this case. A

timely legal response to the 04-03-20 Motion to Dismiss requires the Court-assigned pro bono attorney. Plaintiff as IFP and SMI having suffered documented discrimination under Olmstead and many other laws, qualifies for that counsel under *United States of America, Plaintiff-appellee, v..64 30Acres of Land, More or Less, Situated in Klickitat County, State of Washington , Defendant, and James Starr, Defendant-appellant*, 795 F.2d 796 (9th Cir. 1986) U.S. Court of Appeals for the Ninth Circuit - 795 F.2d 796 (9th Cir. 1986)

**Laura Stephan testifies: "Jeff Miner, the individual who apparently was served with the First Amended Complaint, is not an agent for service for either Providence St. Joseph Health or Mission Hospital Regional Medical Center."**

- *Anne Marie Matthes v. Providence St. Joseph Health & Mission Hospital Regional Medical Center* (PSJH / MHRMC), a concurrent State complaint: 30-2019-01107421-CU-MM-CJC, was properly served by Ms. Matthe's attorney and accepted by Jeff Miner on behalf of PSJH / MHRMC as appropriate service. (Exhibit F)

- Plaintiff's pleadings meet SCOTUS' more liberal pro se standard. Due diligence was exercised. Plaintiff timely served all documents by priority mail except the summons and complaint, which required attorney representation to verify Defendant's registered agent and then IFP Marshall service. On 12-27-19, Plaintiff filed for IFP U.S. Marshall service of the summons of the

complaint to all parties, a motion resubmitted now as an ex parte before this Court.

**Laura Stephan testifies: "February 28, 2020, I wrote to Melissa Calabrese requesting we meet and confer regarding this matter... I declare have never received a response to my calls or letter."**

- I had written to Laura Stephan <u>before</u> the 12-27-19 filing and asked to meet with her. I hoped for an amicable voluntary remedy of Defendants' discrimination against the most seriously-mentally-ill (SMI) patients. She warned that it was unwise as I'm a witness, so we did not meet.

- In 2008, after a two-month inpatient psychiatric confinement at Cedars Sinai and the PSJH St. Joseph Hospital of Orange, including 11 electroconvulsive shock therapy treatments (ECT), Plaintiff remained totally psychotic until she escalated into stage III mania resulting in her 09-09-18 60' cliff jump. She rarely spoke to anyone, remained exclusively housebound, never used the phone, never watched T.V. or participated in anything except very basic self-care and hours of eating, exercising and bathing over and over. She suffers from extreme insomnia. Melissa always unplugged the home phone and wore earplugs due to extreme hyperacusis. The unrelenting loop of extreme psychotic symptoms is sine qua non for her hereditary form of schizoaffective disorder with bipolar features.

- Since ECT, Melissa remains extremely paranoid and not mentally competent to be pro se and dialogue with Defendant's attorneys. Why does PSJH / MHRMC, her treating hospital system since 2008 not know this?
- Plaintiff was too incapacitated to respond to Ms. Stephan's 02-28-20 letter.
- There was no notice in her letter that Ms. Stephan was about to claim standing through "specially appearing." (Exhibit G)

**Ms. Stephan argues: "The Second Amended Complaint in this matter is confusing and unclear."**

- Plaintiff's prima facie case, no matter how "inartfully pled" provides sufficient evidence to support by Plaintiff's legal claim BEFORE Court-appointed pro bono attorney representation that is required for legal clarity.
- Plaintiff's case is handicapped by incomplete, wrong and falsified hospital records released to her.

**Ms. Stephan argues: "Based upon what is pled, this appears to be a complaint based upon medical negligence as plaintiff seems to allege she was prematurely discharged from the various hospitals. Plaintiff alleges that per California Lanterman-Petris-Short (LPS) Act of 1967, a judge should have determined whether or not she was stable for discharge, rather than physicians determining whether or not she was medically stable for discharge "**

Plaintiff has no information as to the specifics of her discharges. Judicial

review was required after 72 hours, not at discharge. Discharge to the streets is not denied by Defendants - only justified.

**Ms. Stephan states: Mission Hospital consists of two hospitals, the main campus in Mission Viejo and a smaller campus in Laguna Beach. The Laguna Beach campus has a locked, psychiatric unit.**

- Mission Hospital's psychiatric unit policy excludes MediCal patients. Plaintiff has always been confined in Med-Surg with a 24/7 suicide monitor.

**Ms. Stephan argues: "Instead she states the physicians were assigned to care for her, and, essentially, failed to comply with the standard of care allegedly set by the Medical Board of California and she was dumped at a community shelter. [ Notably, the Medical Board of California acknowledges that they do not create or set the standard of care. It is physicians who create the standard of care. See generally,** *Kelley v. Trunk* **(1998) 66 Cal.App.4th 519.]**

- PSJH / MHRMC litigating position is to shift blame for their violations in this case and also Matthes (Exhibit F) to their contractors and/or employees.

(a) Today I met with a Medical Board of CA (MBC) detective who came unannounced to my office. She stated that there was a non-patient complaint that I act strangely and required a mental competency evaluation. I was asked to volunteer a urine specimen for toxicology. I have always been in good standing with the MBC since 1979, never had an adverse patient outcome, never had a malpractice liability suit filed against me and won a major medical-

necessity case against DHHS in the U.S. Court of Appeals in 2017.

(b) This same "Dr, Calabrese is strange" complaint was made by Caitlin Pickart, M.D. in 2019 to Riverside Adult Protective Services. Dr. Pickart is a client of attorney Margaret Cahill. I was exonerated by APS.

(c) Not coincidentally, Margaret Cahill, attorney for Defendant, Tara Yuan, M.D. reported me for disciplinary action to the Bar of CA citing Judge Marshall's Doc 16 "Minutes (In Chambers) Order Re Next Friend" 01-17-20. (Exhibit H) The rest of Margaret Cahill's complaint consisted of false, entirely confabulated defamations.

(d) I took this unusual opportunity to cite Laura Stephan's contention that the MBC doesn't set the standard of care to the MBC detective. She affirmed the MBC definitely sets the standard of care for its licensed M.D.'s.

(e) Is it "strange" for a physician family with a SMI loved one to come forward in Federal Court and expose themselves to more bullying because of the unrelenting social stigma against our NAMI families? Yes. And this case has very severely adversely affected Plaintiff's subsequent emergency care at PSJH / MHRMC, our designated community hospital.

- In *Kelley v. Trunk* (1998) 66 Cal.App.4th 519 the Court ruled that a hospital's expert did not opine specifically as to the standard of care <u>regarding room assignments</u> and, consequently, did not dispose of this theory as a matter of professional negligence. This was never about the MBC.

- I'm a longstanding member in good standing of the AMA, CMA and OCMA. I can competently testify that our Medical Board of CA sets the standard of care <u>required</u> under State law.

> "State medical boards are the agencies that license medical doctors, investigate complaints, discipline physicians who violate the Medical Practice Act, and refer physicians for evaluation and rehabilitation when appropriate. The overriding mission of medical boards is to serve the public by protecting it from incompetent, unprofessional, and improperly trained physicians. Medical boards accomplish this by striving to ensure that only qualified physicians are licensed to practice medicine and that those physicians provide their patients with a high standard of care."
> <u>AMA Journal of Ethics</u>
> (journalofethics.ama-assn.org)

Ms. Stephan argues: "Again, from the Second Amended Complaint, it appears that plaintiffs argument is that she was denied her LPS rights/civil rights as she did not approve of being discharged after a 5 day hold, nor did a judge, and she believes she should have been kept in the hospital longer than the physicians using their medical judgment determined she should be confined, as she did not want to go to a homeless shelter."

- I am personal witness that Plaintiff's said to Defendant's bedside staff: "the CIA rapes and kills babies" and other totally delusional psychotic thoughts. At no time could she understand, or possibly think, what Ms. Stephan's confabulates to be Plaintiff's "beliefs." With treating

professionals, Melissa has repeatedly stated her sadness for the others she met whose lives were destroyed by abuse, who remain in homelessness and our hope this case will help them. Until the pandemic, I have spent many hours weekly supporting our NAMI families whose SMI loved one are homelessness. It's the gravamen of this case, that we have great laws that are stare decisis to protect our loved ones from "hospital dumping" and they must be <u>enforced.</u>

- Defendants were legally obliged to contact me directly in real time, as they had the court document on Plaintiff's admission that I was her temporary conservator. (Exhibit C) I contacted Mission Hospital Laguna Beach but never received a single callback.

**Ms. Stephan argues: "It may be that plaintiff is claiming in the Second Amended Complaint that the California Lanterman-Petris-Short (LPS) Act of 1967 is unconstitutional"**

- The Defendants' "as applied" interpretation of the LPS Act in Plaintiff's case is unconstitutional.

**Ms. Stephan argues: "Plaintiffs interpretation of California's Lanterman-Petris-Short Act, Welfare & Institutions Code §§5000 et seq. is inconsistent with the Legislative Intent of the Act."**

- The California legislature and the plain language of the LPS Act do not

allow Defendants' "hospital dumping" of a 5150 SMI Plaintiff to scrub floors and scavenge for food and drink non-potable water for months with no care.

**Ms. Stephan argues that Plaintiff's Prayer for Relief in her Second Amended Complaint is insufficient.**

- Court-assigned pro bono counsel is necessary to make any necessary modifications for relief. Presently, the relief requested is standard in a complaint for Declaratory & Injunctive Relief:

  **a. DECLARE** that Defendants' actions violated:
  1) ADA, Olmstead & other federal discrimination laws
  2) California's Unruh Civil Rights Act
  3) the Lanterman Petris Short (LPS) Act of 1967 "as applied"

  **b. ENJOIN** Defendants, their employees, agents, successors and assigns, and all persons acting in concert with them, from discrimination by denying Plaintiff and similarly-situated gravely mentally ill patients unable to provide for their own food, clothing and housing, their rights under Federal discrimination law, the Unruh Civil Rights Act and the LPS Act.

PSJH / MHRMC intentionally and negligently violated its contractual duties under its contract with the County of Orange, State of California as a designated LPS facility including but not limited to:

1. failing to provide LPS contract required administrative and judicial review to which Plaintiff was entitled, including but not limited to certification hearings,

medication capacity hearings which must be properly initiated, implemented, and conducted. Plaintiff was not mentally competent to sign consent to hospital agreements.

2. denying LPS required appropriate mental health assessments, programs and treatment required to be provided all involuntarily-detained patients irrespective of her med-surg location within the facility.

3. abrogating its responsibilities to those regulations and statutes relevant to the clinical, health and safety needs of Plaintiff.

4. failing to comply with applicable constitutional, statutory, regulatory, and decisional law, including but not limited to California Welfare and Institutions Code Section 5000 et. seq., the requirements set forth on California Code of Regulations, Title 9, Sections 663, 821-829 and 835-868, the requirements governing mental health facilities and/or treatment of Titles 22 and 24 of the California Code of Regulations, the Civil Code, Health and Safety Code, the California Penal Code, Sections 11164-11174.3 and California Welfare and Institutions Code, Sections 15630 and 15610-15610.65 governing mandated reporting, and all applicable policies, procedures or guidelines governing LPS designation established by the Orange County Department of Behavioral Health.

5. failing to comply with its CMS Medicare-MediCal "Conditions of Participation," the provisions of Title 22 of the California Code of Regulations

despite its accreditation by the Joint Commission on Accreditation of Healthcare Organizations.

6. failing to meet its responsibility for seeing her case through to its appropriate disposition – i.e., the clinically indicated, available, and legally allowable treatment, referral or placement that best meets the patient's clinical needs and desires.

7. failing mandate to request an LPS conservatorship investigation by the Orange County Public Guardian or explicitly state in the clinical record the reason for not doing so when the Plaintiff was clearly gravely-mentally-disabled and could not provide for her own food, clothing and shelter. It's attorney, Tara Cowell, refused stating it was not PSJH-MHRMC policy even though Plaintiff met all criteria.

8. allowing incomplete, missing and fraudulent hospital record documentation.

9. failing required physician staff training on the evaluation and treatment of Plaintiff on 5150 with the involuntary detention statutes (WIC Section 5150 et seq.)

10. failing to follow acceptable policies and procedures, plans, and contracts which comport to the Welfare and Institutions Code, the California Code of Regulations, and the California Business and Professions Code related to the legal, ethical, fiscally sound, and clinically appropriate psychiatric treatment of Plaintiff.

11. failing to ensure full compliance with WIC Section 5328.1, which pertains to provision of information to family members with compliant internal policies and clinical documentation that reflect these practices.

12. failed the requirements to ensure that, upon discharge, Plaintiff receives practical, realistic and appropriate referrals to community agencies, suitable placement, and necessary transportation and transfer of care, as evidenced by documentation in the Discharge and Aftercare Plans and other easily identifiable records, regarding these elements and associated interagency communication to facilitate appropriate transition of care.

Plaintiff did not violate FRCP Rules 12(b)(4)(5) or (6).

Defendants violated Olmstead, LPS and many other laws.

I declare on this the 18th day of April 2020, in the City of San Clemente, CA that the foregoing is true and correct to the best of my knowledge, under penalty of perjury.

_Dorothy Calabrese M.D._
Dorothy Calabrese, M.D.