Melissa Calabrese
Dorothy Calabrese, M.D., Guardian ad Litem
2449 South El Camino Real
San Clemente, CA 92672-3351
T. 949.369.6679 / F. 949.369.9674
enviromed@msn.com

```
FILED
CLERK, U.S. DISTRICT COURT
JANUARY 22, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____YS_____ DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA CALABRESE,<br><br>     Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA, COUNTY OF ORANGE, PROVIDENCE ST. JOSEPH HEALTH. MISSION HOSPITAL REGIONAL MEDICAL CENTER, BRIAN CHOI, M.D., TONY K CHOW, M.D., AFSHIN DOUST, M.D., MAHDIEH FALLAHTAFTI, D.O., LAWRENCE V. TUCKER, M.D., TARA YUAN, M.D.<br><br>DOES 1-10<br><br>     Defendants | 5:19-cv-02492-CBM-SPx<br>MOTION FOR WITHDRAWAL OF COUNSEL<br>DECLARATION OF DOROTHY CALABRESE, M.D.<br><br>COMPLAINT FOR DECLARATORY& INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT<br><br>HEARING: 02-22-22 11 AM<br>JUDGE CONSUELO MARSHALL<br><br>FILED 12-27-19 |

Mental-illness disability law is quite different than the "high-profile white collar matters and investigations" header touted on the Larson LLP website. What needs resolution now is the smooth exchange of work product by Larson LLP.

## REQUEST FOR LARSON LLP WORK PRODUCT

Larson LLP cites "miscommunication" as the basis for their withdrawal request. Medicine and law indeed use different languages. Columbia College of Physicians and Surgeons taught me Socratic dialogue to problem-solve the most complex patient cases. That is the basis for my filings, which the US Court of Appeals for the Ninth Circuit relied on to reverse and remand.

During the 01-13-22, teleconference, Jerry Behnke, a master at criminal cross-examination, drilled me as if I was a hostile witness. Though perhaps not his intention, I was bullied. I understood nothing. It was impossible to take notes. One party phone recording is illegal in CA, so it was impossible to review. There was no draft of an amended complaint even mentioned. Neither attorney said they were withdrawing.

There is no legal or factual "problem" that Larson LLP can present that I can't refute and then properly clarify to this court to properly advance this case and the law. Can't I just get the Larson LLP third-amended-complaint work product and written detail of the concerns they developed? Can't this be detailed in their reply to this declaration? Then I can add necessary specificity to the third amended complaint by citing irrefutable facts and the law, except to the parts that require the missing PSJH / MHMC records. M.C. has proper standing to be granted her appropriate ADA rights under Olmstead.

# OLMSTEAD V. L.C.

**1.     ADA protected class**

Class is defined by a formal diagnosis of mental disability combined with associated inability to function without appropriate ADA accommodations.  L.C. and E.W. had diagnoses of mental illness and qualified as gravely-mentally-disabled (GMD) because they could not provide their own food or clothing or shelter.  M.C. has been formally diagnosed with mental disability: a hereditary form of schizoaffective disorder with bipolar features and two suicide attempts with life-threatening injuries. M.C. has been GMD her entire adult life.

**2.     Standing under ADA**

L.C. and E.W were granted standing as IFP, GMD Medicaid patients.  M.C.'s standing is the same - IFP, GMD and Medi-CAL.

**3.     Public benefits for Mental Health**

> "Since 1981, Medicaid has in fact provided funding for state-run home and community-based care" (Olmstead)

M.C. was illegally denied any of her MediCAL community-based care benefits.  In addition,  SAMHSA (Substance Abuse and Mental Health Services Administration) funds mental health programs available to similarly-situated patients.  SB 585 in Sept 2015 amended three previous bills to state that Assisted Outpatient Therapy

(AOT) is fully funded by MHSA. M.C. met all qualifications for AOT, yet it was never offered by PSJH / MHMC.

**4.     Plaintiff denied public entity's services, programs and activities.**

> "In the Americans with Disabilities Act of 1990 (ADA), Congress described the isolation and segregation of individuals with disabilities as a serious and pervasive form of discrimination. 42 U.S.C. § 12101(a)(2), (5). Title II of the ADA, which proscribes discrimination in the provision of public services, specifies, inter alia, that no qualified individual with a disability shall, "by reason of such disability," be excluded from participation in, or be denied the benefits of, a public entity's services, programs, or activities. §12132." (Olmstead)

M.C. was denied ANY available, appropriate post-discharge public ADA accommodations after both her Sept-Oct 2018 and February 2019 hospitalizations.

**5.     PSJH / MHRMC is not ADA exempt**

§504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, Section 504 provides:

> "No otherwise qualified handicapped individual … shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

Title III of the ADA applies to private entities that provide a public accommodation that affects commerce. The ADA defines a public accommodation to include hospitals. *See* 42 U.S.C. §1281(7)(F) (public accommodations include hospitals).

### 6. Homeless shelter is not an option

> "Nor is it the ADA's mission to drive States to move institutionalized patients into an inappropriate setting, such as a homeless shelter." (Olmstead)

M.C. was denied any appropriate post-discharge mental health services, despite meeting all placement requirements. She went to Grandma's House of Hope, a homeless shelter. M.C. was placed with women who were down on their luck but capable of going to school and work. None had a psychotic disorder except M.C. Mission Hospital's pleadings state that they had a right to put M.C. into homelessness because that met the legally required "least restrictive setting."

### 7. Demonstration of Differential Treatment

> "On the ordinary interpretation and meaning of the term, one who alleges discrimination must show that she received differential treatment vis-à-vis members of a different group on the basis of a statutorily described characteristic. Thus, respondents could demonstrate discrimination by showing that Georgia
> (i) provides treatment to individuals suffering from medical problems of comparable seriousness,
> (ii) as a general matter, does so in the most integrated setting appropriate for the treatment of those problems (taking medical and other practical considerations into account), but
> (iii) without adequate justification, fails to do so for a group of mentally disabled persons. . ." (Olmstead)

> "the States have acknowledged that the care of the mentally disabled is their special obligation. They operate and support facilities and programs, sometimes elaborate ones, to provide care." (Olmstead)

L.C. and E.W. did not identify a class of similarly-situated individuals, given preferential treatment. In this case, there are two <u>identical</u> categories of mentally-ill patient groups who receive preferential treatment. They receive appropriate benefits denied M.C. including but not limited to:

(1) Orange County Collaborative Court Mental Health Diversion Program provides: (a) supervised room and board with similarly-situated mentally ill patients and (b) individual and group psychiatric care.

(2) Laura's Law Assisted Outpatient Therapy Program provides individual and group psychiatric care

**8. Responsible Treating Physician**

> "The opinion of a responsible treating physician in determining the appropriate conditions for treatment ought to be given the greatest of deference." (Olmstead)

There was not one responsible treating psychiatrist.

- The Mission psychiatrists were different covering independent contractors - not staff.
- M.C.'s suicide attempt is mentioned in passing
- No psychiatrist treated M.C.
- No psychiatric testing was done.
- M.C.'s totally psychotic daily ramblings were never documented
- No psychiatrist followed the LPS Act
- No psychiatrist followed the MHLB LPS contract

- No psychiatrist followed the minimal standard of care requirements under the CA Welfare & Institutions codes.
- No psychiatrist read her previous Providence psychiatric records including 11 ECT treatments

In Olmstead v. L.C., initially twenty-six State AG's filed in support of the State of Georgia against the patients who won this landmark case. Larson LLP, similarly, is entitled to their opinion. It simply won't stand up in this Court, the 9th Circuit or SCOTUS.

This case was filed on 12-27-19. M.C. is entitled to <u>timely</u> due process and equal protection with pro bono appointed counsel that defends disability rights for the extremely mentally ill.

I declare on this the 22nd day of January 2022, in the city of San Clemente. CA that the foregoing is true and correct to the best of my knowledge.

//Dorothy Calabrese, M.D.